CHARLES CROCKER v. EZRA WOLSON, TREASURER OF THE COUNTY OF SACRAMENTO.

BONDS ISSUED BY SACRAMENTO COUNTY TO THE CENTRAL PACIFIC RAILROAD COMPANY.—The "interest tax" collected under the Act of April 25th, 1863, to authorize the City and County of Sacramento to subscribe to the capital stock of the Central Pacific Railroad Company, must be paid out solely for interest on the bonds issued under said Act, and for the redemption of the same.

DUTY OF TREASURER OF SACRAMENTO COUNTY.—It is the duty of the Treasurer of Sacramento County to advertise for proposals for the redemption of bonds issued to the Central Pacific Railroad Company, whenever there are two thousand dollars or upward remaining of the "interest tax" after payment of the interest then due.

THIS action was commenced in the Supreme Court.

July 1st, 1866, the Treasurer of Sacramento County had in his hands about twenty-five thousand dollars which was collected on the special tax called the "Railroad Interest Tax," provided for in the sixth section of the Act of April 25th, 1863, authorizing the City and County of Sacramento to subscribe to the capital stock of the Central Pacific Railroad. It required only twelve thousand dollars of this money to pay the interest on the bonds which fell due July 1st, 1866. The plaintiff was the owner of thirty of the bonds, and claimed that it was the duty of the Treasurer to advertise for proposals for the redemption of bonds with the surplus of the money after paying the July interest. The Treasurer refused to advertise, and claimed the right to transfer the surplus to the Redemption Fund of the county, by virtue of the thirty-eighth section of an Act entitled " an Act providing for the govern-

ment of the County of Sacramento," approved April 25th, 1863.

The plaintiff applied for a' writ of mandate to compel the Treasurer to advertise for proposals to redeem bonds issued to the railroad company, and to redeem the same if there were any proposals.

*E. B. Crocker*, for Plaintiff.

The seventh section of the Act of April 25th, 1863, relating to these bonds, requires that " whenever, *at any time* after the payment of or providing for the July interest on said bonds, there shall be in the Railroad Fund a sum of two thousand dollars or upwards remaining after the payment of the interest then due on said bonds, the Treasurer of said city and county *shall* advertise, etc., for sealed proposals for the redemption of said bonds," etc.

The requirement in this case is plain and specific. There is no room for doubt as to its meaning.

But the defendant claims that this plain command is over-ruled by the terms of the preceding section, and that he is under no obligation to redeem any bonds until 1873.

Section six provides merely that the Board of Supervisors shall yearly " levy a special tax, to be styled the Railroad Interest Tax, sufficient to raise the amount of interest required to be paid each year on said bonds issued under this Act, and on and after the year 1873, an additional amount sufficient to pay five per cent of the principal of said bonds," which tax when levied and collected is to be " paid to the County Treasurer, to be kept by him as a special fund to be called the Railroad Fund, *to be paid out solely in payment of the interest on said bonds and the redemption of said bonds.*"

This section, instead of qualifying section seven, confirms it. Instead of conflicting, both are harmonious. The meaning of section six is perfectly plain. There is but *one tax* and but *one fund* spoken of.

*H. H. Hartley*, for Defendant, argued that the Act referred to did not contemplate any payment of principal on the railroad bonds until 1873, and that the thirty-eighth section of the Act of April 25th, 1863, (Laws of 1863, p. 503,) which provided that " if at the close of any fiscal year, or on the first Monday of any June, September, or December, there shall be any moneys remaining in any special fund, excepting the School Fund, and the several road funds, *after all claims against such fund have been paid, or sufficient money is set apart,* such moneys shall be transferred to the Redemption Fund," required the Treasurer to transfer the surplus in the interest tax to the General Fund.

By the Court, SAWYER, J.:

There can be no doubt that the " Railroad Interest Tax," collected under section six of the Act of April 25th, 1863, to authorize the City and County of Sacramento to subscribe to the capital stock of the Central Pacific Railroad Company, (Laws 1863, p. 449,) when collected, constituted a part of the " Special Fund, to be called the Railroad Fund," to be paid out solely in payment of the interest on said bonds, and the redemption of said bonds; or that, under the provisions of section seven of said Act, " Whenever, at any time after the payment of, or providing for the July interest on said bonds, there shall be in the Railroad Fund a sum of two thousand dollars, or upward, remaining after the payment of the interest then due on said bonds, it is the duty of the Treasurer of said city and county to advertise  *  *  for sealed proposals for the redemption of said bonds," in all respects as therein provided. The language of that section is too plain to admit of a plausible argument in favor of any other construction.

If these moneys could, under any circumstances, be transferred to the Redemption Fund, under the provisions of section thirty-eight of " An Act providing for the government of the

84

County of Sacramento," passed April 25th, 1863, it could only take place after all claims against such fund (the 'Railroad Fund') have been paid." (Laws 1863, p. 515, Sec. 38.) And that could not happen till all bonds presented for redemption, upon a proper advertisement of proposals, in pursuance of section seven of the Railroad Act, had been redeemed as therein required. The transfer of the balance in question to the "Redemption Fund," provided for in the charter, in the mode shown by the record, is an unauthorized diversion of the moneys from the purposes to which they had been appropriated by law.

The applicant, we think, is entitled to his writ. A peremptory mandate is awarded, in pursuance of the prayer of the petition.